UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| D.W. by VIRGINIA PAYNE<br>　　　　Plaintiff | CIVIL ACTION: 09-13258 |
| v. | HON. JOHN CORBETT O'MEARA<br>UNITED STATES DISTRICT JUDGE |
| COMMISSIONER OF SOCIAL SECURITY<br>　　　　Defendant | HON. VIRGINIA M. MORGAN<br>UNITED STATES MAGISTRATE JUDGE |

## **REPORT & RECOMMENDATION**

This is an action for judicial review of the defendant's decision to deny plaintiff's application for Supplemental Security Income on behalf of her minor child. Plaintiff alleges that the child, DW, is disabled due to a learning disability and headaches. (Tr.75, 82) The claim was denied initially and plaintiff had a hearing before an ALJ at which she and DW testified and were represented by an attorney. The ALJ found the child had a learning disorder, speech and language delays, and a history of headaches. The ALJ also found that the child was not entitled to benefits because his impairments did not meet, medically equal, or functionally equal a Listed Impairment. The ALJ's decision became the final decision of the agency and plaintiff now appeals. Both plaintiff and the government filed for summary judgment and plaintiff filed an "Answer to Motion and Brief for Summary Judgment." An examination of the record and law shows that the Commissioner's decision to deny the application for benefits in question is supported by substantial evidence. Thus, it is recommended that the defendant's motion for summary judgment be granted and the decision denying benefits be affirmed.

1

DW was born in June, 1997 and was a "school age child" at the time the application was filed and at the time of the ALJ's decision in 2009, see 20 CFR 416.926a(g)(2). (Tr. 18, 214)

**Standard of Review**

A court applies the same standard of review to the Commissioner's decision denying benefits to a child as to an adult, as both are governed by 42 U.S.C. §405(g). Under that statute, the Commissioner's decision must be affirmed if it is supported by substantial evidence, even if this court might have decided the case differently. *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir.1999), *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994) (per curiam). A court cannot reverse the agency's decision if substantial evidence also supports an opposite conclusion, but only if substantial evidence does not support the ALJ's conclusion. *Crum,* 921 F.2d at 644. It is the plaintiff's burden to establish disability.

Although the standard of review of the Commissioner's decision is the same as for adults, children's disability claims are reviewed under criteria different from adults. There is no five step evaluation as for adults, but pursuant the 1996 enactment of the Personal Responsibility and Work Opportunity Reconciliation Act, which changed the definition of disability for children seeking Social Security benefits, see 42 U.S.C. § 1382c(a)(3)(C). There is a three step sequential process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

2

*See* 20 C.F.R. § 416.924. In order to be found disabled based upon a listed impairment, the claimant must exhibit <u>all the elements of the listing</u>. *See* 20 C.F.R. § 416.924(a); *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir.1987) (emphasis added). It is insufficient that a claimant comes close to meeting the requirements of a listed impairment. *See Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir.1986).

Under section 416.926(a), if a child's impairment or combination of impairments does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are <u>functionally equivalent in severity to any of the listed impairments</u> of Appendix 1. (20 C.F.R. § 404, subpt. P, app. 1) (emphasis added). The following areas of development (referred to as "domains") are considered in determining whether a child's impairments are functionally equivalent to a listed impairment: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with others; 4) Moving About and Manipulating Objects; 5) Caring for Yourself; and 6) Health and Physical Well Being. *See 20 C.F.R. § 416.926a*. A finding of functional equivalence to a listed impairment is warranted when the child has an extreme limitation in one domain of functioning or marked limitations in two domains of functioning. *See 20 CFR 416.926a(d).*

As summarized in *L.B.M. ex rel. Motley v. Astrue* 2010 WL 1190326, 1(S.D.Ind.,2010):

> By regulation, the Social Security Administration ("SSA") has determined that satisfaction of one of the Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, fulfills the statutory requirement that a child's impairment or combination of impairments "results in marked and severe functional limitations.". The Listing of Impairments, Part B, is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has pre-determined are disabling in children. 20 C.F.R. § 416.925. In general, each listed condition is defined by two sets of criteria: diagnostic findings that substantiate the *existence* of a listed condition and sets of related

3

functional limitations that substantiate the condition's disabling *severity. Id.* A child's impairment or group of impairments can satisfy a listed condition in any of three ways: by meeting all the listed criteria for the condition, 20 C.F.R. § 416.925(c)(3); by medically equaling the criteria, *id.* § 416.925(c)(5); or by functionally equaling the criteria, *id.* § 416.926a(a).

To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d). The impairment must be of a "listing level severity" 20 CFR 416.926a. Lengthy definitions for marked and extreme are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a(e)(2)(i)."Extreme" limitation is the rating for the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. 20 CFR §416.926a(e)(3)(I). In *Jones ex rel. T.J. v. Astrue* 2010 WL 1049283, 9 (E.D.N.Y.,2010), the court found that the ALJ reasonably found the limitation "marked" and not "extreme" where he considered evidence from T.J.'s parents, teachers, and consultative examiners which showed that he has problems completing tasks as a result of his ADHD, but that he can successfully complete tasks if refocused and given individualized attention.

**The Hearing**

At the hearing, the child and his mother testified. The mother stated that the child DW lives with her and her daughter age 18 who goes to college. DW is in school and next year he

4

will go to the 6th grade at a middle school. (Tr. 28)   He has not been retained or held back in any grade.  He gets bad grades and is in special education classes.  He has the most trouble with reading and math.  He doesn't concentrate on things.  He is learning to use the library a little. His main teacher is Mrs. Gipsie (sic: Gilkey).  (Tr. 22-24)  DW uses a computer at school and at home plays Xbox 360.  He likes to play wrestling match and other games.  He does not take any prescription medication. (Tr. 25) He has a pediatrician, and was seen the prior month for congestion.  DW likes to play his games on the computer and sometimes likes to play football outside.  He is not on an organized team but plays with his cousins and friends. He can do physical things but sometimes complains that his feet hurt. (Tr. 26)  DW is also overweight according to his doctor. He can get dressed, brush his teeth, feed himself.  He does not have fights and is a "pretty good boy at school." (Tr. 27) DW does chores around home but has to be reminded sometimes. Id.  What worries his mother most is his reading, math, and speech. He was taking speech at school and she believes it was a speech therapist. He rides a bike.  DW wears glasses–for sitting up close and for reading. (Tr. 29) He watches TV all day, around four or five hours a day.  He watches wrestling, cartoons, and comedies.  He has never been in trouble for running away; he does not drink or smoke.  He gets along with other kids. (Tr.30)  His mother and sister have difficulty understanding his speech.  DW has difficulty answering the phone and taking messages because of his speech issues. (Tr. 31)

      DW testified that he was ten years old and enjoys math.  He studies a little bit.  His best friend at school is Xavier Johnson.  He goes out to recess and talks a lot then.  He uses a computer in the library and he goes on the internet.  His chores at home are to "feed General [his dog], clean up my room, and do the bathroom. . . .Mom  have (sic) to remind me."   His favorite

5

wrestler is John Asina (Phonetic). The one he likes least is Big Daddy V. He does not like that wrestler because he "cheats and stuff." (Tr. 33-34) DW testified that he had friends in the neighborhood including best friends Ricky and Joshua. (Tr. 34) His favorite cartoon is Scooby Doo; his dog's name is General. After taking the pink medicine for his sinuses, he feels better. (Tr. 35)

**The ALJ's Opinion**

In this case, the ALJ found that DW met the first and second steps, and also that he established the severe impairments of learning disorder, speech and language delays, and had a history of headaches. (20 CFR 416.924(c)). The ALJ then determined, based on an absence of medical opinion, that these impairments did not alone or in combination meet or medically equal a listed impairment. (Tr. 49) The ALJ then considered whether there was any functional equivalence and after reviewing the evidence, found that there was not marked impairment in any domain. Plaintiff argues, essentially, that such determination is not supported by substantial evidence.

The ALJ found that headaches were not mentioned in the daily activities. DW spent his time watching television, doing household chores with reminders, and playing football. While there were learning disorder and speech issues, DW receives special education in school and any speech limitation has not affected interaction with his peers. DW enjoys using the computer at school and accessing the internet, likes math, has good social relationships, and enjoys playing video games and caring for his pet. (Tr. 50) School records were considered by the ALJ who noted that for the past four years there was impaired performance, generally attributed to not completing homework assignments, not staying focused, and being inattentive. "The speech

6

questionnaire from the speech pathologist on June 8, 2007 indicated articulation and language impairment primarily . . . with 'ch' and 'sh' sounds. No developmental deficits were noted." (Tr. 51) Receptive and expressive language scored two standard derivations below the mean. He also demonstrated decreased comprehension and expressive errors with grammar, pragmatic skills, and semantics. Testing on conversational speech was 90% intelligible without context, improving with context or repetition to 100%. (Tr. 51)

In a report of daily activities, plaintiff reports that DW runs and plays, watches TV, rides his bike, and plays sports. (Tr. 87-90) He plays well with children of all ages, gets along well with adults and his older siblings, and has no behavior problems such as fighting, stealing, fires, or cruelty to animals. (Tr. 87) DW is in special education and is not a behavior problem in school. Id. He does his chores with no problems and the chores are usually done correctly. He takes care of his own personal needs. He has difficulty pronouncing his words and it is difficult for others to understand him and to enable him to take messages. (Tr. 88)

A headache questionnaire indicates that DW has had headaches for six months. He is on no medication for this condition. It has not been diagnosed as any particular kind of headache. Neither has he been seen at the ER or placed on restrictions. (Tr. 91)

The teacher questionnaire completed by Ms. Mary Gilkey indicates that DW is below grade level in reading, math, and written language. He has not had any unusual degree of absenteeism. (Tr. 92) In the rating section, "serious problems"[1] are noted in Domain I (Acquiring and using Information) with comprehension of oral instructions, comprehension and

---

[1]These are ranked as 4 out of 5. No activities were noted to be "very serious problems" (5).

performance in math, expressing ideas in written form, learning new material, recalling previously learned material, and applying problem solving skills in class discussions.  He had "obvious problems" (3) with understanding vocabulary and providing oral explanations and descriptions. (Tr. 93)   In Domain 2 (Attending and Completing Tasks) DW had  "very serious problems" daily with carrying out multi-step instructions, completing assignments, completing work without careless mistakes, and working without distracting himself or others. He also had "serious problems" with changing activities without disruption, organizing, and working at a reasonable pace. (Tr. 94) Domain 3 (Interacting and Relating with Others) presented less difficulty, but he did have "serious problems" in the areas of asking permission and following rules.  DW also had "obvious problems" with expressing anger appropriately, being respectful and obeying adults, and using language appropriate to the situation and the listener. (Tr. 95) Almost all of his speech could be understood on the first attempt. Id.   No problems were noted in Domain 4 (Moving about and Manipulating Objects) and only slight problems in Domain 5 (Caring for Self).  These were related to handling frustration, being patient, using good judgment, appropriately asserting emotional needs, calming himself, and using appropriate coping skills. (Tr. 97)   In Domain 6 (Medical and Physical Well Being), it was noted that DW uses glasses and did not miss school due to illnesses. (Tr. 98) DW is in speech therapy at the school. (Tr. 101)     DW's primary speech related issues are articulation and language impairment. (Tr. 119)  He has difficulty pronouncing "ch" and "sh" sounds. Id.   He is failing in most classes. (Tr. 123)  Although there are many positive comments in his school records, he repeatedly is noted to need additional practice, and in kindergarten, he was noted to fall asleep and it was suggested he repeat kindergarten. (Tr. 148)   DW's language skills were rated at an 8

year level, although he was age 10. (Tr. 119-120) There are numerous notes of unsatisfactory progress. (Tr. 132-135, 162, 166) Despite these issues, it is not indicated that he has any cognitive impairment; rather, the difficulties are attributed to speech and language impairment. (Tr. 193, 211)

In April, 2007, DW's test results show that he was blow the 50th percentile in most academic areas on the Stanford Achievement Test. (Tr. 281) He had little or no mastery of fundamental skills and knowledge. (Tr. 282) His report card in June, 2007 indicates that he getting C's in science, social studies, and library; A in music and PE, and B's in resource math and reading. It is noted that he is working below grade level in both of those. (Tr. 283, 285) There is reference to an Honor Roll and Poetry. (Tr. 285)

The Individualized Education Program (I.E.P.) results are included in the record. (Tr. 290 et seq) On these and other school records of conferences, it is noted that parent did not attend the meeting. Amy Robbins, a school speech/Language pathologist, completed an evaluation in October, 2007. She found that his conversational speech was limited but understandable and that he would benefit from speech therapy. (Tr. 312-314)

In October, 2007, when the child was ten years old, he was evaluated for disability. (Tr. 312-314) His mother attended with him. DW was co-operative and attempted all tasks. Attention to task and age related behaviors were appropriate. His receptive and expressive language skills were assessed and he tested at the 0.3 percentile to first percentile range, two standard deviations below the mean. (Tr. 313) With respect to articulation, he tested at the 18th percentile. (Tr. 313) Prognosis for improved language skills was fair and improved articulation good with continued intervention. (Tr. 314) Michele Bridges, a speech specialist, reviewed the

9

records and opined that DW had less than marked limitations in all functional domains. (Tr. 316)

DW was examined by Dr. Sood, M.D. in December 2007. His height was 55 inches and his weight 123 pounds, above the 95th percentile. The mother told the doctor that DW was in special education. In addition to that, the doctor noted that DW started to have headaches in October, 2007 and had an optometry examination. He was given glasses but was not wearing them. (Tr. 319) The doctor opined that DW had severe impairments but he did not meet the Listings. (Tr. 320-321) Dr. Paul Liu, D.O. a specialist in pediatric psychiatry completed a report after reviewing the record. In it, he opined that DW has no problems in Domain 4 (Moving about and Manipulating Objects) and "less than marked" limitations in all other domains. In his comments, he writes:

> "Significant problems in Domains 1 and 2 per Teacher Questionnaire. [DW] is S & L [Speech and Language] impaired per school. Low OWLS but Michele Bridges [speech specialist, Tr. 316]gave less than marked limitations in Domains 1 and 3. It does not appear that school has done IQ and achievement testing. Because Teacher Form indicate DW is below level and has serious problems in Domain 1, we need Clinical Battery. Problems in Domain 2 indicate need to obtain psych CE for MSE and diagnosis also"

(Tr. 326)

In January, 2008, DW underwent testing by Terrance Mills, Ph.D. a licensed psychologist. (Tr. 327-330) All information used was obtained from DW and his mother. The alleged disability was a "learning disability." It was noted that there were no reports of headaches. There was nothing unusual reported in terms of past psychiatric history, developmental history, or relevant medical history. Regarding school, DW was in the 5th grade in Inkster Public schools, had no significant behavior problems, and continued to receive speech therapy. There are no significant health, legal, emotional issues or drug use in the home. DW is typically up at 7 am and in bed by 9 pm. DW can independently care for his hygiene, does

chores, and likes video games and basketball. There were no memory concerns, no evident symptoms of ADHD, no abnormal perceptions. He had good overall concentration and focus but was unable to count by 3s or 7s. He was able to count to 100 by 5s and 10s and perform simple one digit calculations in addition and subtraction. His fund of general knowledge was limited. Although able to recite the alphabet, he could not name the current president or any of the Great Lakes. He had no evidence of mood disorder and his affect was appropriate. On his IQ test, he had a full scale I.Q. of 75, placing him within the borderline range of intellectual functioning. The results were believed valid. (Tr. 329)

**Plaintiff's Argument:** **The ALJ Committed Reversible Error by Not Finding That the Child Functionally Equals the Listing of Impairments**

Plaintiff points to several items of evidence which were either ignored or given inappropriate weight by the ALJ. In the Answer, plaintiff argues that marked or extreme limitations should have been found in the domains of Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others. The initial brief quotes Social Security Rulings which identify the tasks and abilities with respect to these domains and then states: "Almost all of which is not performed by DW at his age level." (#14, 19) Plaintiff then concludes with the statement that: "DW has an 'extreme' limitation in multiple domains. At a minimum he has "marked" limitation in multiple domains. A finding to the contrary is not supported by the evidence." (#14, Brief p 20) No further discussion or analysis is included. In the Answer, however, plaintiff discusses these in more detail.

Plaintiff appears to argue that the ALJ should have given more weight to the school records including the standardized test results which were reported to show performance of two standard deviations below the mean. (#14, Brief pp 14-15) It seems that plaintiff refers to the

graph at Tr. 221/237 with hand-marked notations. There is a section for Wechsler Scores, which does not appear to be filled in, but for DW it would not place him at two or more standard deviations below the mean. DW's school records do not show any cognitive impairment issues. The only area noted was that for Speech and Language. The ALJ considered the opinions of the Speech and Language Specialists, and the reviewing and examining psychologists/psychiatrist and physicians. DW's most affected domain is Acquiring and Using Information. It is clear that he has a very low fund of general knowledge and has difficulty with math and reading. However, he enjoys video games and can pay attention and concentrate on tasks. He apparently has a good fund of information regarding those subjects in which he is interested, including wrestling and music where his reports show he performs above grade level. His continued speech and language therapy have had a positive impact on his development and the prognosis has been good. Even if DW should be found to have "marked" limitation in this domain, the remainder of the findings would not establish entitlement to benefits.

With respect to Domain 2, Attending and Completing Tasks, DW could use improvement as his teachers frequently commented on his failure to pay attention in class, and that he had trouble completing assignments. But, DW could complete chores and other tasks, and the examining psychologist also noted that he had good memory, concentration, that there was no evidence of ADHD, and that he had the ability to pay attention. In Domain 3, Interacting and Relating with Others, DW does very well. He has friends with whom he plays, he gets along with adults and peers, and although has some speech issues, at least 90% of what he says is intelligible. Domain 4 has no limitations and Domain 5 is essentially the same. In his twelve page opinion, the ALJ carefully considered each of the domains and the child's ability to

perform. The decision finding of deficits which were "less than marked" limitation is supported by substantial evidence.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied and the decision denying SSI benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

        s/Virginia M. Morgan
        Virginia M. Morgan
        United States Magistrate Judge

Dated: July 23, 2010

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on July 23, 2010.

        s/Jane Johnson
        Case Manager to
        Magistrate Judge Virginia M. Morgan